# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * *
ERICA LIVINGSTON,                *
                                 *   No. 17-1619V
             Petitioner,         *
                                 *   Special Master Christian J. Moran
                                 *
v.                               *
                                 *   Filed: September 14, 2021
                                 *
SECRETARY OF HEALTH              *
AND HUMAN SERVICES,              *   Attorneys' fees and costs, interim
                                 *   award, expert hourly rate
             Respondent.         *
* * * * * * * * * * * * * * * * * * * *
```

Mark T. Sadaka, Law Offices of Sadaka Associates, LLC, Englewood, NJ, for petitioner;
Julia M. Collison, United States Dep't of Justice, Washington, D.C., for respondent.

## PUBLISHED DECISION AWARDING
## ATTORNEYS' FEES AND COSTS ON AN INTERIM BASIS[1]

Seeking compensation pursuant to the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa–10 through 34 (2012), Ms. Livingston claims that she suffered from a reactivation of the Epstein-Barr virus ("EBV") and Sjogren's syndrome after receiving an influenza ("flu") vaccine on November 5, 2014. Pet., filed Oct. 27, 2017, Preamble. Ms. Livingston's counsel of record is Mr. Mark T. Sadaka.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. This posting will make the decision available to anyone with the internet. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

On March 16, 2021, Ms. Livingston moved for an award of attorneys' fees and costs on an interim basis, requesting $51,654.15 in fees and $23,023.32 in costs, for a total of $74,677.47.  Pet'r's Mot., at 4.  The Secretary has opposed, at least in part.  As explained below, fees and costs will only be evaluated through April 21, 2020.  Calibrated to this date, Ms. Livingston's motion requests $44,188.14 in fees and $14,884.87 in costs, for a total of $59,073.01.

For the reasons that follow, **Ms. Livingston is awarded $50,973.01**, for work performed through April 21, 2020.

I.    **Procedural History**

Relevant events in Ms. Livingston's case concern her claims for entitlement and her request for attorneys' fees and costs.  These are outlined below.

A.    **Procedural History relating to Entitlement**

Ms. Livingston's October 27, 2017 petition alleged a flu vaccine caused her to suffer from a reactivation of the EBV, subsequently causing Sjogren's syndrome.  Ms. Livingston filed medical records periodically through February 26, 2018.  After the Secretary determined that the records were sufficient, he filed his Rule 4 Report on October 9, 2018.  The Secretary argued that compensation was not appropriate because (1) Ms. Livingston had not established a specific compensable injury, and (2) a reliable medical theory was lacking.  Resp't's Rep. at 12-14.

To develop her case, Ms. Livingston filed an expert report from Dr. Yehuda Shoenfeld on July 1, 2019 as exhibit 23.[2]  Dr. Shoenfeld presented a theory in which the flu vaccination (Nov. 5, 2014) caused a latent Epstein-Barr virus to reactivate (Dec. 22, 2014), and the reactivation of the Epstein-Barr virus led to the development of small fiber neuropathy (Jan. 12, 2015), and the development of small fiber neuropathy caused the development of Sjogren's syndrome (June 2, 2015).  Dr. Shoenfeld's theory relies on the presence of pentapeptide homologies expressed by influenza virus, EBV, and humans that he deems to be significant.  See id. at 39, 54.

_____

[2] Exhibit 23 was stricken at petitioner's request, and then refiled as "Corrected Expert Report" on April 20, 2020, remaining labeled as exhibit 23.

The parties discussed Dr. Shoenfeld's theory in subsequent status conferences. Due to deficiencies in his report, during the July 15, 2019 status conference, the undersigned ordered Dr. Shoenfeld to answer questions in a supplemental report. The undersigned asked: (1) whether the proposed homology between influenza virus and EBV derived from a BLAST search; (2) what time would medical science anticipate (a) flu vaccine to reactivate EBV, (b) EBV to cause small fiber neuropathy, and (c) small fiber neuropathy to cause Sjogren's; and (3) whether any epidemiological evidence shows the frequency of EBV reactivating from a dormant state.

Ms. Livingston then filed voluminous medical literature associated with the initial report, along with the ordered supplemental report on September 13, 2019. See exhibit 106. However, Dr. Shoenfeld did not comply with the instructions in the July 16, 2019 order. During the following status conference on October 9, 2019, the undersigned again ordered Dr. Shoenfeld to answer the questions in a supplemental report. Ms. Livingston filed Dr. Shoenfeld's next report on November 25, 2019. Exhibit 110. The report and Ms. Livingston's theory were again discussed in a status conference on December 11, 2019. The discussions in these status conferences mostly focused on the theory that the flu vaccine reactivated a latent EBV infection.

Subsequently, the Secretary filed reports from Dr. J. Lindsay Whitton and Dr. Brendan Antiochos on February 7, 2020. Dr. Whitton argues Ms. Livingston's blood work ("the pattern of EBV-specific antibodies, plasma that was negative for EBV DNA, and normal lymphocyte count") is consistent with a past EBV infection and very strongly indicates she did not experience an EBV reactivation. Exhibit A at 11-13, 26. Dr. Whitton further argues the remainder of Dr. Shoenfeld's theory is moot because he opines that Sjogren's was caused by EBV reactivation. Id. at 13. Dr. Antiochos also argues there is no evidence of EBV reactivation in this case. Exhibit C at 3-5. Dr. Antiochos further comments that there is not a single case report of Sjogren's following vaccine administration. Id. at 21.

Importantly, both experts criticize Dr. Shoenfeld's reliance on the existence of short homologies as proof of cross-reactive immune responses. Dr. Whitton explains that the presence of short homologies is nothing unusual given the vast numbers of proteins containing multiple pentameters, and further argues that these findings are immunologically meaningless. Exhibit A at 19-23. Dr. Antiochos argues the same, undermining Dr. Shoenfeld's reliance on the mere presence of

homologies by demonstrating the frequency of such homologies.  See exhibit C at 6-12.

In a February 20, 2020 status conference, the undersigned questioned whether Ms. Livingston could maintain her current cause of action and stated that the Secretary's experts' collective opinions seem convincing.  Mr. Sadaka then suggested that Dr. Shoenfeld might have an alternative opinion that the flu vaccination directly caused Ms. Livingston to suffer Sjogren's syndrome, despite not disclosing this opinion in his three previous reports.  The request to consult with Dr. Shoenfeld and possibly retain a rheumatologist was permitted. The following February 21, 2020 order highlighted a weakness in Ms. Livingston's case, and the undersigned stated that the reasonable basis to maintain the case is questionable.

Ms. Livingston next filed two more reports from Dr. Shoenfeld, responding to the Secretary's experts, on April 21, 2020.  Exhibits 118 and 119.  Ms. Livingston also filed a status report stating that she has retained a rheumatologist. Her initial deadline to file the rheumatologist's report was June 22, 2020.

 After granting four motions for enlargement of time, the undersigned deferred ruling on Ms. Livingston's fifth motion, filed on January 19, 2021.  Ms. Livingston then filed the expert report, authored by Dr. Lige Rushing Jr., on February 2, 2021.  Exhibit 175.  Dr. Rushing opined that the vaccine caused fibromyalgia.  Although Ms. Livingston has not yet filed an amended petition,[3] the new claim and submission of Dr. Rushing's report takes Ms. Livingston's case in a new direction.  Later, the Secretary filed responsive expert reports, authored by Dr. Whitton and Dr. Antiochos (exhibits E and F), on May 11, 2021.

### B.      Procedural History relating to the Motion for Attorneys' Fees and Costs on an Interim Basis

Ms. Livingston requests fees for work performed and costs incurred as of March 16, 2021, when Ms. Livingston filed her motion.  Ms. Livingston argues that an award of interim fees and costs is appropriate because her case was filed with good faith and a reasonable basis, and counsel has borne considerable fees and costs.  Pet'r's Mot., at 1-3.

---

[3] Ms. Livingston was ordered to file an amended petition on June 3, 2021. After a motion for enlargement of time, the deadline was extended to October 1, 2021.

The Secretary filed his initial response to Ms. Livingston's motion on March 23, 2021.  Resp't's Initial Resp.  The Secretary did not provide any objection to Ms. Livingston's request.  Id.  Instead, he stated that he "defers to the Special Master as to whether Ms. Livingston has made a special showing to justify an award of interim attorneys' fees and costs under the particular circumstances of this case as set forth in Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343 (Fed. Cir. 2008)."  Id. at 2.

Ms. Livingston filed her reply on March 26, 2021.  Pet'r's Initial Rep. Quoting Avera, she noted that "Interim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained."  Avera, 515 F.3d at 1352.  Ms. Livingston referred to protracted proceedings and costly experts as criteria for determining eligibility for interim attorneys' fees and costs.  Pet'r's Initial Rep., at 2.

On June 3, 2021, respondent was ordered to respond to Ms. Livingston's fees motion again, taking a position regarding reasonable basis.  In his response, respondent argues that Ms. Livingston failed to maintain reasonable basis after February 7, 2020.  Resp't's Second Resp., filed July 30, 2021, at 7.  According to respondent, the submission of reports from Dr. Whitton and Dr. Antiochos rendered Ms. Livingston's claim as an unsupported assertion that the flu vaccine caused an injury.  Id.

On August 6, Ms. Livingston replied, noting respondent implicitly agrees with Ms. Livingston that reasonable basis existed in this case at least until February 7, 2020.  Pet'r's Second Rep., at 1.  Ms. Livingston further asserts she has maintained reasonable basis throughout the case, and in the alternative, that she maintained reasonable basis at least through April 21, 2020.  Id. at 2-3.  Ms. Livingston also argues her counsel would suffer an undue hardship if fees and costs were denied for Dr. Shoenfeld's work.  Id. at 4.

This matter is now ripe for adjudication.

## II.   **Analysis**

Ms. Livingston's motion implicitly raises a series of sequential questions, each of which requires an affirmative answer to the previous question.  First, is Ms. Livingston eligible under the Vaccine Act to receive an award of attorneys' fees and costs?  Second, as a matter of discretion, should Ms. Livingston be

awarded her attorneys' fees and costs on an interim basis?  Third, what is a reasonable amount of attorneys' fees and costs?  These questions are addressed below.

## A.    Eligibility for an Award of Attorneys' Fees and Costs

As an initial matter, interim fee awards are available in Vaccine Act cases. <u>Avera</u>, 515 F.3d at 1352.  Since Ms. Livingston has not received compensation from the Program, she may be awarded "compensation to cover [her] reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim."  42 U.S.C. § 300aa-15(e)(1).  As the Federal Circuit has stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs.  <u>Simmons v. Sec'y of Health & Human Servs.</u>, 875 F.3d 632, 635 (Fed. Cir. 2017).

### 1.    Good Faith

"Good faith" is a subjective standard.  <u>Id.</u>;  <u>Hamrick v. Sec'y of Health & Human Servs.</u>, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  A petitioner acts in "good faith" if he or she honestly believes that a vaccine injury occurred.  <u>Turner v. Sec'y of Health & Human Servs.</u>, No. 99-544V, 2007 WL 4410030, at * 5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  The Secretary has not challenged Ms. Livingston's good faith here, and there is little doubt that Ms. Livingston brought the claim with an honest belief that a vaccine injury occurred.

### 2.    Reasonable Basis

In contrast to good faith, reasonable basis is purely an objective evaluation of the weight of the evidence.  <u>Simmons</u>, 875 F.3d at 636.  Because evidence is "objective," the Federal Circuit's description is consistent with viewing the reasonable basis standard as creating a test that petitioners meet by submitting evidence.  <u>See</u> <u>Chuisano v. Sec'y of Health & Human Servs.</u>, No. 07-452V, 2013 WL 6234660 at *12–13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013) (explaining that reasonable basis is met with evidence), <u>mot. for rev. denied</u>, 116 Fed. Cl. 276 (2014).

Some issues complicate the analysis of whether Ms. Livingston had reasonable basis for her claim.  First, Ms. Livingston's claim has changed during

the period in which she requests interim attorneys' fees.  As demonstrated below, this seems to separate Ms. Livingston's case into three phases, in which separate reasonable basis analyses may be appropriate.  Next, the quality of Ms. Livingston's initial claim was questionable at times.  Finally, despite the prior issue, respondent appears to have waived the issue of reasonable basis for a portion of the litigation.  Each of these issues will be discussed below.

### a) Ms. Livingston's Claim through February 7, 2020

When she filed her petition on October 27, 2017, Ms. Livingston claimed she suffered a reactivation of EBV and then Sjogren's syndrome, caused-in-fact (or significantly aggravated) by a November 5, 2014 flu vaccine.  Pet. at 1.  Ms. Livingston pursued this claim for some time.  She retained Dr. Shoenfeld and filed five expert reports from him: an initial report on July 1, 2019, a supplemental report on September 13, 2019, answers to questions from the Court on November 25, 2019, and two responsive reports on April 21, 2020.  See exhibits 23, 106, 110, 118, 119.

During the July 15, 2019 status conference, the undersigned raised several questions regarding Dr. Shoenfeld's initial report.  See Order, issued July 16, 2019. The undersigned ordered Ms. Livingston to file a supplemental report, answering specific questions.  Id.  Ms. Livingston filed Dr. Shoenfeld's supplemental report on September 13, 2019.  In the subsequent status conference on October 9, 2019, the undersigned noted that Dr. Shoenfeld did not address the questions as ordered on July 16, 2019.  See Order, issued Oct. 10, 2019.  Ms. Livingston was again ordered to file a supplemental report, addressing the undersigned's questions.  Id. Dr. Shoenfeld provided answers in his next report, filed on November 25, 2019. Exhibit 110.  Dr. Shoenfeld noted a difficulty in establishing exact timing for EBV reactivation.

Following respondent's submission of expert reports from Dr. Whitton and Dr. Antiochos on February 7, 2020, the undersigned observed that the reports "seem convincing that [Ms. Livingston] did not experience a reactivation of Epstein-Barr virus" following vaccination.  See Order, issued February 21, 2020. "Without this link in Dr. Shoenfeld's causal chain, Ms. Livingston cannot establish her existing theory."  Id.  The undersigned noted that Ms. Livingston's reasonable basis to maintain the case was questionable.

On April 21, 2020, Ms. Livingston filed two more reports in which Dr. Shoenfeld responded to each of respondent's expert's reports.  Exhibits 118, 119.

The undersigned again noted that Dr. Shoenfeld's reports were "not very good." See Order, issued June 3, 2021.  The undersigned questioned whether Dr. Shoenfeld's reports should be stricken from the record in light of their quality and Ms. Livingston's new fibromyalgia claim.  Ms. Livingston's counsel objected due to the potential impact on her motion for attorneys' fees and costs.  Ultimately, the reports were not stricken.

Regardless of the quality of Ms. Livingston's initial expert reports, respondent appears to waive the issue of reasonable basis up to the point that he filed his expert reports from Dr. Whitton and Dr. Antiochos.  See Resp't's Second Resp., at 7-8.  Respondent argues Ms. Livingston "failed to maintain a reasonable basis after February 7, 2020."  Id. at 7.

"[W]e rely on the parties to *frame the issues for decision* and assign to courts the role of neutral arbiter of matters the parties present."  Greenlaw v. United States, 554 U.S. 237, 243 (2008) (*emphasis* added).  Furthermore, "a weak case from petitioners may pass the threshold for reasonable basis in the early stages of the case."  Swick v. Sec'y of Health and Human Servs., No. 13-526V, 2018 WL 6009290, at *6 (Fed. Cl. Spec. Mstr. Oct. 22, 2018).  The parties are in accord that Ms. Livingston satisfied reasonable basis through February 7, 2020.  Though the Secretary did not object to a finding of reasonable basis through February 7, 2020, the undersigned would likely have found that the objective evidence supported the claims set forth in the petition.

> b)   *Ms. Livingston's Claim from February 7, 2020 to April 21, 2020*

The next issue concerns whether Ms. Livingston maintained reasonable basis after February 7, 2020.  A compelling expert report from respondent has the potential to extinguish the reasonable basis of petitioner's claim.  See Frantz v. Sec'y of Health & Human Servs., No. 13-158V, 2019 WL 3713942 (Fed. Cl. Spec. Mstr. June 24, 2019) (finding that case lost reasonable basis after the Secretary's expert undercut a critical aspect of petitioner's case), mot. for rev. denied, 146 Fed. Cl. 137 (finding that special master's determination regarding reasonable basis was neither arbitrary nor capricious).  Nonetheless, a petitioner's reasonable basis would not necessarily expire as soon as respondent's expert reports were filed. See Swick, 2018 WL 6009290, at *6 (noting petitioner must respond to noticed deficiencies to maintain reasonable basis); see also Frantz, 2019 WL 3713942, at *15 (permitting reasonable basis to extend through petitioner's fourth expert

report, at which point petitioner "cemented the failure . . . to answer the fundamental point that [respondent's expert] had raised . . . .").

Here, Ms. Livingston submitted several reports that were "not very good." However, respondent concedes that Ms. Livingston's case had reasonable basis in the early stages of litigation. Respondent's expert reports from Dr. Whitton and Dr. Antiochos on February 7, 2020 raised fundamental problems with Ms. Livingston's claim. Ms. Livingston then elected to submit more reports from Dr. Shoenfeld on April 21, 2020, which contained deficiencies similar to his prior reports. Furthermore, as discussed below, Ms. Livingston appears to have abandoned Dr. Shoenfeld's theories to begin pursuing a new claim. Thus, the undersigned finds that on April 21, 2020, Ms. Livingston lost a reasonable basis to maintain her initial claim.

### c)   Ms. Livingston's New Claim After April 21, 2020

Following Dr. Shoenfeld's April 21, 2020 report, Ms. Livingston began seeking a new expert. Nearly one year later, Ms. Livingston filed an expert report from Dr. Lige Rushing. Exhibit 175. Although an amended petition has not yet been filed, Dr. Rushing's report indicated that Ms. Livingston is pursuing a new claim, that the flu vaccine caused her to suffer fibromyalgia. Whether Ms. Livingston has a reasonable basis for this new claim is an ongoing and developing issue. Furthermore, respondent disputes reasonable basis after April 21, 2020. As such, the undersigned will defer evaluating the reasonable basis for the second claim until Ms. Livingston's final fees motion is filed.

## B.   Appropriateness of an Interim Award

Interim awards should not be awarded as a matter of right. Avera, 515 F.3d at 1352 (Fed. Cir. 2008). Instead, petitioners must demonstrate "undue hardship." Id. The Federal Circuit noted that interim fees "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." Id. The Federal Circuit has also considered whether petitioners faced "only a short delay in the award" before a motion for final fees could be entertained. Id.

The Federal Circuit has not attempted to specifically define what constitutes "undue hardship" or a "protracted proceeding." In this case, however, an interim award of some amount appears appropriate. Indeed, the proceedings have been ongoing for almost three years and Ms. Livingston's counsel has expended funds on multiple expensive expert reports.

Ms. Livingston retained a costly expert, and her case has been ongoing for more than three years.  Counsel warrants he would suffer an undue hardship if costs for Dr. Shoenfeld's work are denied because the amount is owed irrespective of reimbursement.  Pet'r's Second Rep., at 4.  These showings sufficiently demonstrate an undue hardship.  Furthermore, reasonable basis has been met for the work performed through April 21, 2020.  Accordingly, it is appropriate that she receive an interim award for her attorney's expenses through that date.

## C.     Reasonableness of the Requested Amount

Under the Vaccine Act, a special master may award reasonable attorneys' fees and costs.  42 U.S.C. § 300aa-15(e)(1).  Reasonable attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended on litigation, the lodestar approach.  Avera, 515 F.3d at 1347–48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)); Saxton ex rel. v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).  In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness.  See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).

As explained above, the undersigned has declined to determine whether Ms. Livingston possesses reasonable basis for her claim after April 21, 2020.  This deferral means that Ms. Livingston is not eligible for reimbursement of expenses incurred after that date at this time.  Accordingly, fees and costs will be evaluated through April 21, 2020.

### 1.    Reasonable Hourly Rate

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community.  See Blum, 465 U.S. at 895.  The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Id. at 895 n.11.  A petitioner's counsel in the Vaccine Program is paid the forum rate unless the bulk of the work is performed in a locale other than the forum (District of Columbia) and the local rate is significantly lower than the forum rate.  Avera, 515 F.3d at 1349.  If these two requirements are met, the Davis County exception applies, and petitioner's counsel is paid according to the local rate to avoid a "windfall."  Id.; see Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. United States Envtl. Prot. Agency, 169 F.3d 755, 757–60 (D.C. Cir. 1999).

For cases in which forum rates apply, <u>McCulloch</u> provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney.  <u>McCulloch v. Sec'y of Health & Human Servs.</u>, No. 09-293V, 2015 WL 5634323, *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), <u>mot. for recons. denied</u>, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015).  The Court has since updated the <u>McCulloch</u> rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015–2016, 2017, 2018, 2019, 2020, and 2021 can be accessed online.[4]

Ms. Livingston argues reasonable rates for Mr. Sadaka in the amount of $362.95/hour in 2016; $376.38/hour in 2017; $396.00/hour in 2018; $405.00/hour in 2019; and $422.00/hour in 2020.  She argues reasonable rates for the paralegals of $140.00/hour in 2016; $145.17/hour in 2017; $150.55/hour in 2018; $156.00/hour in 2019; and $163.00/hour in 2020.  The Secretary does not dispute Ms. Livingston's counsel's entitlement to these rates.  Given Mr. Sadaka's level of experience, the undersigned finds these rates to be reasonable.  Mr. Sadaka's rate, as well as the rates of Ms. Curry and Ms. Congiusti and other staff assisting with the case, are in line with the forum hourly rate fee schedule and therefore reasonable.

2.      <u>Reasonable Number of Hours</u>

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary.  <u>See</u> <u>Saxton</u>, 3 F.3d at 1521.  The Secretary did not challenge any of the requested hours as unreasonable.

Mr. Sadaka's time entries provide adequate detail to assess reasonableness. Generally, Mr. Sadaka and staff assisting on the case appropriately did not request compensation for administrative tasks, which are not compensable.  For example, filing documents is a clerical task for which attorneys should not charge.  <u>See</u> <u>Guerrero v Sec'y of Health & Human Servs.</u>, No. 12-689V, 2015 WL 3745354, at *6 (Fed. Cl. Spec. Mstr. May 22, 2015) (citing cases), <u>mot. for rev. den'd in</u>

---

[4] The 2015–2016, 2017, 2018, 2019, 2020, and 2021 Fee Schedules can be accessed at: https://www.uscfc.uscourts.gov/node/2914.  The hourly rates contained within the schedules are updated from the decision in <u>McCulloch</u>, 2015 WL 5634323.

relevant part and granted in non-relevant part, 124 Fed. Cl. 153, 160 (2015), app. dismissed, No. 2016-1753 (Fed. Cir. Apr. 22, 2016).

Accordingly, Ms. Livingston is awarded attorneys' fees in the amount of $44,188.14. This amount represents work performed prior to April 22, 2020. Ms. Livingston may apply for fees for the remainder of counsel's work in a final fees application.

    3.  Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). For attorneys' costs through April 21, 2020, Ms. Livingston requested $14,884.87, consisting of filing fees, acquiring medical records, and retaining and compensating Dr. Shoenfeld. See Pet'r's Mot., Fees Exhibit B. The non-expert-related costs total $1,384.87. The undersigned finds that Ms. Livingston has provided adequate documentation for these costs.

For the expert-related costs through April 21, 2020, Ms. Livingston has requested compensation for the expert fees of Dr. Shoenfeld, totaling $13,500. Reasonable expert fees are also determined using the lodestar method in which a reasonable hourly rate is multiplied by a reasonable number of hours. See Chevalier v. Sec'y of Health & Human Servs., No. 15-001V, 2017 WL 490426, at *3 (Fed. Cl. Spec. Mstr. Jan. 11, 2017). A reasonable hourly rate for an expert depends, in part, on the quality of the expert's work. Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 218-25 (2009).

Dr. Shoenfeld has been compensated at a rate of $500 per hour in some cases. See Philips v. Sec'y of Health & Human Servs., No. 16-906V, 2019 WL 3409975, at *4 (Fed. Cl. Spec. Mstr. May 16, 2019); Vance v. Sec'y of Health & Human Servs., No. 15-675V, 2021 WL 3011903, at *5 (Fed. Cl. Spec. Mstr. June 9, 2021. However, an expert's good work in one case does not automatically warrant an assumption that the expert will perform as well in the next case. See Frantz, 2019 WL 3713942, at *20-*21 (reducing an expert's reasonable hourly rate based on the quality of the expert's report), mot. for rev. denied, 146 Fed. Cl. 137, 146 (finding that special master's decision to reduce the fee award was neither arbitrary nor capricious). "[T]he quality of the reports and testimony that [the expert] provided in other cases cannot be used as a proxy for the quality of the reports and testimony that he provided in this case. Nor can a flawed expert opinion be rehabilitated merely because the expert has testified successfully in

prior cases.  While the existence of prior successful testimony may lend credence and enhance an expert's reputation, it cannot provide the justification for a special master to ignore expert opinion–oral or written–if that opinion is incoherent, illogical, inconsistent, or incorrect." La Londe v. Sec'y of Health & Human Servs., 110 Fed. Cl. 184, 208 (2013), aff'd, 746 F.3d 1334 (Fed. Cir. 2014).

Here, Dr. Shoenfeld's work was not commensurate with the work of an expert charging $500 per hour.  First, Dr. Shoenfeld does not appear to have any experience treating people with Epstein-Barr infections or researching EBV.  See exhibit 24 (Dr. Shoenfeld's CV).  This lack of specialization contributes to a finding that Dr. Shoenfeld's work in this case does not merit the high hourly rate he has received when he has offered opinions in fields that much closely match his experience.  Second, Dr. Shoenfeld's work was not good.  The poor quality is reflected in several ways.  As previously discussed, on July 15, 2019, the undersigned ordered Dr. Shoenfeld to answer several questions in a supplemental report.  Dr. Shoenfeld's supplemental report on September 13, 2019 did not address the questions as ordered.  This failure to comply with instructions necessitated a third report from Dr. Shoenfeld.  Next, Dr. Shoenfeld also appears to have ignored medical records and the statements of treating physicians.  See exhibit A at 9-11 (noting multiple doctors referencing blood work as unremarkable and indicative of past EBV infection rather than reactivation).  The persuasiveness of the Secretary's refutation of Dr. Shoenfeld's opinions appears to have contributed to Ms. Livingston's change in claim from EBV reactivation to fibromyalgia.

Due to the quality of Dr. Shoenfeld's work and Ms. Livingston implicitly abandoning Dr. Shoenfeld's opinions, the undersigned finds that $200 per hour is a reasonable hourly rate for the expert's contributions.

Dr. Shoeneld's invoices reflect that he has spent 27 hours on this case.  Fee Exhibit B at 16.  The number of hours appears reasonable.  Thus, a reasonable amount of compensation for Dr. Shoenfeld is $5,400, reflecting $200 per hour for 27 hours of work.[55]

---

[55] Alternatively, the undersigned could have reduced the number of compensable hours because some of Dr. Shoenfeld's time was spent creating a supplement report which was ultimately unresponsive and required more time to be spent on an additional report.  Regardless of whether Dr. Shoenfeld's hourly rate or number of hours is reduced, an award of $5,400 is a reasonable amount of compensation for Dr. Shoenfeld's work.

Taking these costs reductions into account, Ms. Livingston is awarded costs in the amount of $6,784.87

**III.** <u>**Conclusion**</u>

Accordingly, Ms. Livingston is awarded:

**A lump sum of $50,973.01 in the form of a check made payable to Ms. Livingston and Ms. Livingston's attorney, Mark T. Sadaka.**

This amount represents reimbursement of interim attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e). In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[6]

**IT IS SO ORDERED.**

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master

---

[6] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).